(C. D. 161)

COHN & ROSENBERGER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 17, 1939)

*Puckhafer & Rode (John D. Rode* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Sullivan, Judge: The official sample of the merchandise covered by this protest (Exhibit 1) consists of an ornament, more or less circular in shape, composed of a network of strung imitation pearl beads of various sizes. It is described in the invoice as "Woven Caps."

The collector assessed duty thereon at rates equivalent to 110 per centum ad valorem under the following provisions of paragraph 1527 of the Tariff Act of 1930:

Par. 1527. (a) Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

\*    \*    \*    \*    \*    \*    \*

(2) \* \* \* of whatever material composed, valued above 20 cents per dozen pieces, 1 cent each, and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem \* \* \*.

The protest claims as follows:

Said merchandise is not dutiable as assessed. It is not jewelry nor is it within the provisions of Par. 1527 (c) as it is not composed of metal or set with any of the items therein mentioned.

It is properly dutiable at only 60% under Par. 218 (f) or at 50% under Par. 218 (g) or 230 (d).

At the trial plaintiff's witness Martha Lash testified she was in the plaintiff's employ, and has been for nine years; that she handles the import entries; that plaintiff is engaged in the "novelty jewelry" business; that they also handle nonjewelry articles; that she is familiar with plaintiff's foreign invoices, and particularly with the merchandise in question; that she saw it when it was imported. The witness produced a sample from this shipment, which was received in evidence as Exhibit 1. She testified Exhibit 1 is a pearl cap; that she has also heard it referred to as a "Juliette Cap"; that she is familiar with its use, and has seen it used; that it is worn on the head in the evening with an evening gown. She then testified as follows:

Q. When it is being worn by women does it serve to keep the hair in place?— A. Well, it would.

Presiding Judge McClelland. For what purpose is it worn; for ornamentation or to keep the hair in place?

The Witness. I would say it is being used to keep the hair in place.

On cross-examination she testified that when they wear caps like Exhibit 1 they do not wear any hair ornaments, and if they wear hair ornaments they do not wear this cap.

On redirect examination she testified there was no metal in Exhibit 1.

Plaintiff's witness Oppenheimer testified he is an officer of the plaintiff corporation, and that it manufactures and sells "novelty jewelry and accessories"; that he is familiar with Exhibit 1, which he

termed "a Juliette cap"; that he heard the testimony of the previous witness, and agrees with it; that he does not know of any other use for this article than to be worn on the head of a woman; that he has been selling jewelry at wholesale throughout the country for thirty years; that he has traveled in the eastern half of the United States, and has met "business buyers from various cities over the country"; that during such time he has acquainted himself with the meaning of the term "jewelry" in the trade and commerce in which he is engaged.

He was then asked by his counsel:

Q. Based upon your many years' experience would you say that Exhibit 1 is commercially known in your trade as an article of jewelry?

He answered, "I would say not." His testimony then continued as follows:

Q. Just forget for a moment your commercial training and experience, and speaking as a man of the street, let's say not in the jewelry business, would you say in the common understanding Exhibit 1 was a piece of jewelry.—A. I would not say it was jewelry.

\*          \*          \*          \*          \*          \*          \*

Presiding Judge McClelland. Would you say it wasn't jewelry?
The Witness. Yes, sir, I would, your Honor.

\*          \*          \*          \*          \*          \*          \*

X Q. What would you say it was?—A. An item of dress.

X Q. In the same sense that a hat or dress would be?—A. Yes.

X Q. Is it in your opinion something made to cover a certain portion or a certain particular portion of a person's body?—A. The hair, yes. \* \* \* To wear over the hair.

\*          \*          \*          \*          \*          \*          \*

X Q. It is used as an ornament on the hair, isn't it?—A. I wouldn't say it was.

X Q. Do you sell it as an ordinary hat?—A. We sell it as a cap—a Juliette cap.

X Q. That is what it is known as; but it is not used in the same sense as a cap, as commonly used, is it?—A. No.

He then testified on cross-examination that he does not sell them to hat or cap stores, nor are they sold in hair net departments.

In response to a question by the court he testified he had sold them to buyers for jewelry departments, and had never seen them on display in the stores to which he sells "in any department other than the jewelry department."

On redirect examination he testified he had also sold them to non-jewelry departments, but he could not recall the name of such.

Examiner Nathanson testified for the plaintiff that for the past twenty years he has passed imitation jewelry at the port of New York; that he advisorily classified the merchandise in question; that the beads therein are imitation pearl beads, made of glass "decorated or coated in some manner"; that based upon his experience he would say

that Exhibit 1 "was in chief value of glass which has been coated or decorated."

Plaintiff's witness Ida M. Zimmerman testified that she handles mainly millinery articles, such as ladies' hats; that she is a buyer of millinery for chain stores; that she is familiar with Exhibit 1; that she has seen it before, and has purchased similar articles for her concern from the plaintiff, Cohn & Rosenberger, in a quantity of "approximately about 200 dozen"; that she sells such articles to a millinery concern having "a chain of millinery stores"; that this article is used as an evening hat; that she does not sell these articles as jewelry, nor have they been offered to her as jewelry by the plaintiff; that based upon her common understanding of the term "jewelry" she does not consider Exhibit 1 an article of jewelry; that she has worn an article like Exhibit 1 herself, and it will fit various sizes of heads; that it keeps the hair in place when worn and is highly ornamental.

On cross-examination she testified that when her concern purchases these articles they are put in the hat department on "head models * * * the same as a hat would be exhibited"; that her company handles costume jewelry, such as bracelets, pendants, and necklaces; that she sells articles like Exhibit 1 to every one to whom she sells necklaces and other costume jewelry.

Defendant's witness Irving Katz testified for the defendant that he is a salesman in the "pearls and jewelry" business; that he has sold articles such as Exhibit 1, and his concern imports them; that he has sold them to "Novelty and costume jewelry houses." He then testified as follows:

Q. Have you sold other jewelry articles to such companies or houses?—A. I have.

Q. When you say novelty or costume jewelry, just what do you mean by that phrase?—A. People that make and sell to the retailers costume and novelty jewelry.

Q. You mean you call it novelty jewelry?—A. Novelty jewelry.

He further testified he had seen these articles "worn for evening wear * * * by the ladies in the different ballrooms * * * as an ornament * * * on the head"; that he has also seen them wearing "bracelets, necklaces, and caps" to match this article; that he has seen these articles on sale in jewelry stores along Fifth Avenue; that he has "seen them displayed in the show windows" in connection with other jewelry articles.

The case was then submitted by both sides.

Is this article "Jewelry, commonly or commercially so known"?

As to whether or not this merchandise is commercially known as jewelry: The only testimony on that point is that of the witness Oppenheimer, who stated that based upon his twenty-eight years in

the jewelry trade, Exhibit 1 was not commercially known as jewelry. His testimony as to commercial designation falls far short of establishing that in the trade and commerce of the United States Exhibit 1 is definitely, uniformly, and generally known by some other designation than jewelry. (*Austin, Nichols & Co.* v. *United States,* T. D. 45048, 60 Treas. Dec. 131, and cases cited therein.)

We will therefore determine whether or not this merchandise is commonly known as jewelry.

The evidence in the case at bar is rather conflicting as to whether or not this merchandise is commonly known as jewelry. The evidence on the part of the plaintiff, being the testimony of the witnesses Oppenheimer and Zimmerman, practically establishes that it is not commonly known as jewelry, and, of course, if it is not such, it is removed from the jewelry paragraph. The testimony of defendant's witness Katz indicates that he has sold this merchandise to "novelty and costume jewelry houses" and that he has seen it on sale in jewelry stores and displayed in jewelry show windows.

The testimony of Mr. Nathanson, a Government official, and examiner of merchandise for twenty years at the port of New York, who advisorily classified this merchandise, is that this merchandise is in chief value of glass which has been coated and decorated.

The evidence is unanimous that this merchandise is ornamental in character, and that it is worn by ladies on the head on dress occasions in the evening. It is true that the appellate court has held that almost any article of adornment may be jewelry, regardless of the material of which it is composed, and dictionary definitions tend to support that holding. But we cannot consider such holdings and definitions as against the weight of the evidence in this case, which appears to us to remove this merchandise from the category of jewelry.

The plaintiff in its protest claims this merchandise dutiable at 60 per centum ad valorem under paragraph 218 (f), which, so far as applicable, is as follows:

\* \* \* all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored \* \* \* or decorated or ornamented in any manner \* \* \* 60 per centum ad valorem.

The testimony of Mr. Nathanson indicates that if this merchandise is not jewelry it would fall within this paragraph. The single witness, Mr. Katz, disputing the plaintiff's testimony that this is not jewelry, does not overcome the facts proved by the plaintiff. It is true one of plaintiff's witnesses indicates that this merchandise is occasionally sold to jewelers' establishments, and this is supported by Mr. Katz; but this is very slight evidence in favor of the classification. The mere fact that a merchant sells his merchandise to a certain institu-

tion that deals in jewelry does not classify it as jewelry, and is entitled to but limited weight. A drug store buys and sells many things that are not drugs—perfumery, for instance. That fact would not classify perfumery as drugs.

We believe that the weight of the evidence establishes that this merchandise is not jewelry, either in the common or commercial sense. It follows, therefore, that it more clearly falls within paragraph 218 (f) as articles of glass, blown, ornamented or decorated. We therefore hold it dutiable thereunder at 60 per centum ad valorem.

Judgment accordingly.